UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-against-

JAMES CUTLER,

                   Defendant.

No. 02-CR-441 (LAP)

MEMORANDUM & ORDER

---

LORETTA A. PRESKA, Senior United States District Judge:

     Before the Court are Defendant James Cutler's requests for
(1) an order directing the United States Attorney's Office for
the Southern District of New York ("the USAO") to return certain
payments, made on Mr. Cutler's behalf by Bankruptcy Trustee John
Murtha, so that those funds can be used to satisfy Mr. Cutler's
outstanding tax liabilities, (see dkt. no. 418 at 3; dkt. no.
426 at 2); and (2) an order instructing the Internal Revenue
Service ("IRS") to reallocate certain tax payments applied to
liabilities for tax year 2003 against liabilities for tax year
2005, (see dkt. no. 426 at 1).  The Government opposed the
requests, (see dkt. no. 428), and Mr. Cutler filed a reply, (see
dkt. no. 432).  At the Court's invitation, the IRS also
submitted a supplemental letter outlining its understanding of
the facts of this case.  (See dkt. no. 437.)  Following that
submission, the Government and Mr. Cutler filed additional
supplemental letters.  (See dkt. nos. 438, 440.)  For the
reasons below, Mr. Cutler's requests are DENIED.

I.    **Background**

The Court assumes the parties' familiarity with the background surrounding Mr. Cutler's motions, so only those facts relevant to the instant requests will be summarized here.

In 2004, Mr. Cutler was convicted by a jury of various counts of bank and tax fraud and was sentenced to a year-and-a-day term of imprisonment.  (See dkt. no. 301 ("Stip.") ¶ 1.) The judgment of conviction ordered Mr. Cutler to pay restitution of more than $29 million and to forfeit approximately $1.4 million to the United States.  (Id.)  Shortly after sentencing, several Nevada entities in which Mr. Cutler's wife owned interests[1] closed on the sale of a real estate parcel in Nevada. (Id. ¶ 6.)  That transaction resulted in millions of dollars of profits for the Cutlers through the entities Ms. Cutler owned. (Id.)  In light of those changed circumstances, the Government obtained a restraining order freezing those assets in Nevada bank accounts.  (Id. ¶¶ 7-8.)  Not long after, Ms. Cutler caused bankruptcy petitions to be filed with respect to the Cutler-owned entities involved in the real estate sale.  (Id. ¶ 17.) John Murtha was appointed as Bankruptcy Trustee.  (Id. ¶ 19.)

---

[1] Those entities are Sage View Estates, LLC ("Sage View"), JEC Development Co. ("JEC"), and Sage View Ranch, LLC ("Sage Ranch").  (Stip. ¶ 5.)  Sage View is titled 50% in the name of Steven Cote and 50% in the name of JEC.  (Id.)  JEC is 100% titled in Ms. Cutler's name.  (Id.)  Sage Ranch is titled 65% in Ms. Cutler's name and 35% in Mr. Cote's.  (Id.)

Following extensive negotiation and appearances before the
Court, the parties--specifically, the Cutlers, the USAO, and Mr.
Murtha--agreed to a stipulation ("the Stipulation"), which
provided for the distribution of the restrained funds as well as
the payment of various tax obligations.  (See id. ¶¶ 27-61.)
Relevant to this dispute, the Stipulation provided that:

> The Trustee, when making a payment to the [USAO] . . .
> will . . . reserve and hold 38% of any such
> distribution and, at the appropriate time, will pay
> the amounts reserved directly to the [IRS] with
> instructions that the amounts should be applied to the
> tax obligations of James Cutler for the tax years in
> which the income was received.

(Id. ¶ 34.)  A similar provision in the Stipulation required
attorney Steven Kessler--who had also taken possession of
significant amounts of funds--to also withhold taxes and make
only net payments to the USAO.  (Id. ¶ 21.)  Under this
arrangement, Mr. Murtha and Mr. Kessler oversaw the transfer and
distribution of hundreds of thousands of dollars to both the
USAO and the IRS.  (See, e.g., Murtha Accounting at 14-15.)  Any
funds sent to the USAO were to be applied first to Mr. Cutler's
forfeiture judgment and then remitted to his victims.  (See
Stip. ¶ 52.)

In August 2013, Ms. Cutler submitted an application to the
United States Bankruptcy Court for the District of Nevada,
claiming that funds were distributed to the USAO that should
have been remitted to the IRS on the Cutler's behalf.  (See

3

Motion to Determine Allocation of Payments to Be Made to the
Internal Revenue Service, In re Sage Ranch Estates, LLC, No. 06-
50111 (GWZ) (Bankr. D. Nev. Aug. 27, 2013), ECF No. 287.)   The
USAO was not a party to those proceedings--though it did receive
notice of the motion--and it did not participate.   Shortly
thereafter, the Bankruptcy Court approved the motion, finding
that the USAO had received over $800,000 that should have been
offset by taxes but which had not been.   (See Order Approving
Motion to Determine Allocation of Payments to Be Made to the
Internal Revenue Service ("Bankr. Order"), In re Sage Ranch
Estates, LLC, No. 06-50111 (GWZ) (Bankr. D. Nev. Sept. 26,
2013), ECF No. 292.)   Importantly, however, the Bankruptcy Court
noted the following:

> The amount to be paid by the [USAO] to the IRS is
> solely between the [USAO] and the IRS, and the [USAO]
> shall be and hereby is ordered to allocate and pay
> over to the IRS such monies as the IRS requests it pay
> in order to resolve the tax liability of Mrs. Cutler
> for the tax years 2005 and 2006 up to $804,515.96
> . . . .

(Id. at 2 (emphasis added).)   To date, the IRS had made no
request for the USAO to pay any funds.

In or about June 2015, Mr. Cutler submitted a letter
regarding certain outstanding tax obligations for himself and
his wife.   In response, the Court ordered Mr. Murtha to file an
accounting related to his distributions of funds to the IRS and
the USAO.   (See dkt. no. 410.)   Mr. Murtha submitted the

required accounting, which showed that he had transferred approximately $350,000 to the USAO.  (See Murtha Accounting at 14-15.)  An additional $140,000 was transferred to the USAO from Mr. Kessler.  (See id. at 14.)  As Mr. Murtha's accounting shows, the amounts paid to the USAO were "net" amounts, with relevant taxes reserved and paid to the IRS.  (See id. at 5-12.)

## II.  Discussion

Mr. Cutler makes two requests.  First, asks that the Court direct the USAO to return more than $450,000 in payments, so that those funds can be used to satisfy the Cutlers' 2005 tax obligations.[2]  Second, Mr. Cutler asks that the Court direct the IRS to credit approximately $60,000 in past payments against 2005 tax year liabilities, as opposed to the 2003 liabilities against which the IRS applied them.  (See dkt. no. 426 at 1.) The Court will consider each request in turn.

### a. Payments Made to the USAO

Mr. Cutler's request to direct the USAO to return monies paid to it, to which the United States is indisputably entitled, is premised on the Nevada Bankruptcy Court order.  (See dkt. no. 418 at 2.)  Mr. Cutler's reliance on that order is misplaced.

---

[2] (See dkt. no. 418 at 3; dkt. no. 426 at 2.)  In his initial letter, Mr. Cutler seeks an order that the USAO make available over $498,000 in funds.  (See dkt. no. 418 at 3.)  In his supplemental letter, however, Mr. Cutler requests just over $445,000.  (See dkt. no. 426 at 2.)

Importantly, the Stipulation contains a forum selection clause: "The Parties agree that the exclusive jurisdiction and venue for any dispute arising between and among the Parties under this Stipulation, will be the United States District Court for the Southern District of New York." (Stip. ¶ 57.) Because that clause is mandatory--i.e., it conferred exclusive jurisdiction on the SDNY and incorporated obligatory venue language--the Bankruptcy Court lacked jurisdiction over the subject matter of Mr. Cutler's letters, which both parties acknowledge relates to his payment obligations under the Stipulation. See Glob. Seafood Inc. v. Bantry Bay Mussels Ltd., 659 F.3d 221, 225 (2d Cir. 2011). Consequently, the Bankruptcy Court's ruling is of no moment on this issue.[3]

Contrary to the Bankruptcy Court's findings, Mr. Cutler's position finds no support in either the Stipulation or Mr. Murtha's accounting records. Indeed, Mr. Murtha's records confirm that the amounts he remitted to the USAO on Mr. Cutler's behalf were "net" payments--that is, Mr. Murtha had already set aside amounts for taxes that were to be paid to the IRS. No provision in the Stipulation requires the USAO to remit to the

---

[3] The Court also observes that, even on its own terms, the Bankruptcy Court's order does not help Mr. Cutler. That order specifically states that the USAO must pay amounts requested by the IRS, not by the Cutlers. (See Bankr. Order at 2.) And, as both parties acknowledge, the IRS has never requested such a payment. (See dkt. no. 426 at 2; dkt. no. 428 at 3.)

6

IRS any such "net" payments made to satisfy Mr. Cutler's
forfeiture and restitution obligations.  In other words, Mr.
Cutler is not entitled to pay down his wife's tax liabilities
with monies that were properly forfeited to the United States or
returned to his victims.  To rule otherwise, would be to award
Mr. Cutler a substantial, undeserved windfall.  Therefore, Mr.
Cutler's request for an order directing the IRS to request from
the USAO approximately $450,000 in funds will be denied.

### b. **Reallocating Tax Payments from 2003 to 2005**

Mr. Cutler next requests an order directing the IRS to
apply approximately $60,000 in payments against his 2005 tax
liabilities, which the IRS instead applied against his 2003 tax
liabilities.  (See dkt. no. 426 at 1.)  That request is also
meritless.

Mr. Cutler does not contest that he had outstanding tax
liabilities for tax year 2003, and there is no record evidence
to suggest that Mr. Murtha specified to the IRS that the
challenged $60,000 in payments related to 2005 taxes.  Absent
specific instructions, the IRS is authorized to apply partial
tax payments received on behalf of taxpayers "to periods in the
order of priority that the [IRS] determines will serve its best
interest."  IRS REV. PROC. 2002-26 (2002).  Indeed, the IRS's
decision to apply those payments to the 2003 liabilities is
hardly surprising because the statute of limitations for those

liabilities would run before that of the 2005 liabilities.  Mr. Cutler cites no legal authority that would permit him to mandate the reallocation of those payments now.

Nevertheless, the IRS appears willing to give Mr. Cutler what he seeks.  (See dkt. no. 437 at 2-3.)  But Mr. Cutler will not be getting a free lunch:  Reallocating paid taxes from 2003 to 2005 will simply leave the 2003 liabilities unresolved.  And, as the IRS points out, that would understandably result, at the very least, in the accrual of two extra years' worth of interest.  (See id. at 3.)  In any event, the Court will not order the IRS to do that which the law does not mandate. Accordingly, Mr. Cutler's request that the Court order the IRS to apply approximately $60,000 in payments against his 2005 tax year liabilities will be denied.  The IRS may, of course, agree to reallocate those payments if it wishes to do so.

### III. Conclusion

For the foregoing reasons, Mr. Cutler's requests, as set forth in his letters [dkt. nos. 418, 426], are DENIED.  The Clerk of the Court shall close the open motions.

**SO ORDERED.**

Dated:      October 25, 2021
            New York, New York

_Loretta A. Preska_
LORETTA A. PRESKA
Senior United States District Judge